MICHAEL MCSHANE (CA State Bar #127944)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com

*Attorneys for Plaintiffs*
(Additional Counsel Listed in Signature Block)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **KIM KEMPF, GAIL WALLISER, JEREMY MORGAN, DELETTRA RANSOM, XAVIER BENNETT, CASSAUNDRA MAXWELL** individually, and on behalf of all others similarly situated,<br><br>            **Plaintiffs,**<br><br>v.<br><br>**APPLE INC.,**<br><br>            **Defendant.** | **CLASS ACTION COMPLAINT:**<br><br>**(1) ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505, *ET SEQ.*; (2)NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. § 56:8-1, ET SEQ.; (3) MICHIGAN CONSUMER PROTECTION ACT, MICH. COMP. LAW § 445.901, ET SEQ.; (4) WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE § 19.86.010, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiffs Kim Kempf, Gail Walliser, Jeremy Morgan, Delettra Ransom, Xavier Bennett, and Cassaundra Maxwell individually and on behalf of all others similarly situated (or collectively "Plaintiffs"), file this class action against Defendant Apple Inc. ("Apple" or "Defendant"). Plaintiffs allege the following upon personal knowledge as to their actions and upon information and belief based upon the investigation of their attorneys:

### INTRODUCTION

      1.     This case challenges storage capacity misrepresentations, omissions, and other sharp business practices by Defendant in advertising, marketing and sale of certain Apple devices, as well as the inordinate amount of space consumed by Apple's iOS 8 operating system (hereinafter "iOS 8"). Reasonable consumers can and do make purchasing decisions based upon the labeled and advertised storage space in a device, including willingness to pay more for a device advertised to

possess greater storage space. This is precisely what Apple did here as to 16GB iPhones and iPads (the "Devices"). Specifically, and as set forth in greater detail below, iOS 8 used an unexpectedly large percentage of the storage capacity of the "Devices" and consumed more space than subsequent iterations of iOS.

2.      This case challenges storage capacity misrepresentations, omissions, and other improper business practices by Defendant in advertising, marketing and sale of certain Apple devices, as well as the inordinate amount of space consumed by the iOS 8 operating system. Reasonable consumers can and do make purchasing decisions based upon the labeled and advertised storage space in a device, including willingness to pay more for a device advertised to possess greater storage space. This is precisely what Apple did here as to 16GB iPhones and iPads (the "Devices"). Specifically, and as set forth in greater detail below, iOS 8 used an unexpectedly large percentage of the storage capacity of the "Devices" and consumed more space than subsequent iterations of iOS.

3.      Despite knowing that as much as 21.3% of the Devices' advertised storage capacity was dedicated to and consumed by iOS 8 and unavailable on purchased Devices that had iOS 8 installed, Apple made no disclosure of and otherwise omitted this material fact to consumers. At the time of purchase and even after, Plaintiffs and reasonable purchasers had no way to determine the amount of storage or memory that was unavailable for their own use on account of Apple's practices.

4.      Apple also forced consumers to retain applications on the Devices that many consumers do not want but were unable to delete. For example, iOS 8.2 included the Apple Watch as a required application that could not be deleted even if the consumer does not have an Apple Watch, nor any desire to own one. This is but one of numerous applications forced on consumers, including Plaintiffs and the Class, that epitomizes Defendant's disregard of its advertising representations and warranties as to storage space available for own use. Nowhere did Apple disclose or explain that this application or any other application decreases the advertised storage space for consumers' own use on the purchased Devices. Apple's actions were intentional as it trapped people in an ecosystem of

CLASS ACTION COMPLAINT

Apple's own products or favored products which had paid money to Apple for placement, all leading to supra-competitive profits.

5.     Reasonable and ordinary consumers, including Plaintiffs and the Class, do not expect any marked discrepancy between the advertised level of capacity and the available capacity of the Devices. Without a disclosure or affirmative representation, no consumer would understand that an extraordinary percentage of the Devices' storage was unavailable based on the operating system, forced applications and other storage space limitations such as the manner in which the root partition limited access. Defendant's vague, misleading and insufficient supposed disclaimer of "actual formatted capacity less" does not ameliorate Apple's misstatement and omissions because, among other things, the space unavailable to consumers was not the result of formatting, which has a specific meaning that does not incorporate the operating system or the applications. Apple had exclusive knowledge of how much space it was partitioning or otherwise keeping for itself for each application or usage as evidenced by its AppleCare writings posted after the end of the class period alleged herein.

6.     By contrast, Defendant's chief competitor, Samsung, provided the following disclaimer language regarding the storage capacity of its flagship Galaxy S8 smartphone:

> *User memory is less than the total memory due to the storage of the operating system and software used to operate the features. Actual user memory will vary depending on the operator and may change after software upgrades are performed.*

Again, formatting is not the operating system or the applications present on the device, so no reasonable consumer could expect to lose as much as 20% of the capacity of the device as occurred here.

7.     Compounding the harm to consumers, after Defendant provided materially less than the Devices' advertised capacity, Defendant aggressively marketed a monthly-fee-based storage system called iCloud. Using the tactics described herein, Defendant gave less storage capacity than advertised, notifying the user that the storage capacity was almost full, only to later offer to sell storage capacity in a desperate moment, e.g., when a consumer is trying to record or take photos at a child or grandchild's recital, basketball game, or wedding. To put this in context, each gigabyte of

storage Apple shortchanges its customers amounts to approximately 400-500 high resolution photographs. And, in a 16GB device that has as much as 20% of its storage capacity unavailable, a customer would be missing out on between approximately 1,280 and 1,600 high resolution photographs, or high resolution video recording totaling more than 30 minutes.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). The matter in controversy exceeds $5,000,000 exclusive of interests and costs, and this matter is a class action in which certain class members are citizens of States other than Defendant's state of citizenship.

9.    Venue is proper in this Court because Defendant resides in this District, its Terms and Conditions require litigation here, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff' claims, including the dissemination of the false and misleading advertising alleged herein, occurred in, and were directed from this District.

## THE PARTIES

10.    Plaintiff Kim Kempf is a citizen and resident of Glen Ellyn, Illinois.

11.    Plaintiff Gail Walliser is a citizen and resident of Darien, Illinois.

12.    Plaintiff Jeremy Morgan is a citizen and resident of Perth Amboy, New Jersey.

13.    Plaintiff Delettra Ransom is a citizen and resident of Pennsauken Township, New Jersey.

14.    Plaintiff Xavier Bennett is a citizen and resident of Inkster, Michigan.

15.    Plaintiff Cassaundra Maxwell is a citizen and resident of Lake Stevens, Washington.

16.    Defendant Apple Inc. is a corporation organized under the laws of the State of California, and has its principal place of business in Cupertino, California.

## BACKGROUND

17.    Storage capacity in computing and telecommunications is typically measured in a digital unit called a byte. A kilobyte, or "KB," is typically defined as one thousand, or $10^3$, bytes. A megabyte, or "MB," is typically defined as one million, or $10^6$, bytes. A gigabyte, or "GB," is typically defined as one billion, or $10^9$, bytes.

CLASS ACTION COMPLAINT

18.     Defendant advertised the storage capacity of the Devices in gigabytes, using the acronym "GB." Therefore, the storage capacity of 16GB devices is advertised as 16 billion bytes. The base storage unit was the basis for reasonable consumers to determine whether to buy the iPhone or a competing device as well as to price how much storage was needed and at what cost.

19.     In reality, nothing close to the advertised capacity of the Devices was available to end users. Indeed, the discrepancy between advertised and available capacity is substantial and beyond any possible reasonable expectation. For the Devices, the shortfall ranged from 18.1–21.3%.

20.     As noted above, although Defendant represented, disclosed, and advertised based upon the decimal-based system of measurement, upon information and belief, the Devices display available capacity based upon the binary definitions. This is confusing even to the technically savvy because it prevents consumers from making the proverbial "apples to apples" comparison. Exacerbating this confusion is the fact that rather than using the GiB representation, as suggested by the ISQ, the graphic interface used on the Devices uses the abbreviation GB, even though it is apparently referring to gibibytes, and not gigabytes.

21.     Further, Defendant segregates the storage space of the Devices into a media partition and a root partition. The media partition is the portion of the Device's storage that is available to the consumer. Control of the root partition rests exclusively with Apple and consumers have no ability to reduce the portion of the storage apportioned to Apple. It is important to note that the root partition is larger than it needs to be and viable storage capacity on the root partition side can remain unused even as the media partition becomes full and a consumer is instructed to purchase iCloud space from Apple. Further, several users have reported that, if a consumer "jailbreaks"[1] a Device, the root partition can be reduced in size to accommodate a greater storage allocation to the consumer without comprising the functionality of the Devices.[2]

---

[1] The term "jailbreak" is used to describe the modification of a Device to remove some, or all, controls or limitations set by the manufacturer, and may include substitution of the operating system. Jailbreaking a Device typically voids the manufacturer's warranty, and is an option pursued only by the most technically sophisticated and/or adventurous users.

[2] Even more confusing, an alternative unit known as a "gibibyte" represents 1,073,741,824, or 230, bytes. While the gibibyte is represented by the acronym "GiB," Defendant sometimes uses "GB" when referring to gibibytes. On information and belief, the Devices display their storage capacity to users in gibibytes, but use the acronym "GB." This significantly complicates the user's ability to

5

## FACTUAL ALLEGATIONS

22.     Apple is in the business of, inter alia, designing, manufacturing, assembling, advertising, and marketing its line of "iPhone" cellular telephones, with the first model released on or about on June 29, 2007.

23.     Apple marketed and sold the iPhone 6 and 6 Plus, which it introduced on or about September 9, 2014. Predecessor models include the iPhone 5s and 5c introduced on or about September 10, 2013, and the iPhone 4s introduced on or about October 10, 2011. Apple also manufactures and markets a line of "iPad" tablet devices, first introduced on April 3, 2010.[3]

24.     Apple explicitly stated, marketed, and represented on its website, advertisements, product packaging, and other promotional materials, that the iPhone 6 and 6 Plus were available with a storage capacity of 16 gigabytes (16GB). This is the principal false representation made by Defendant and relied upon by Named Plaintiffs. Apple made similar representations with respect to earlier models of the iPhone. At all times during the relevant time period, Defendant made similar representations concerning the storage capacities of its 16GB iPads.

25.     Specifically, Defendant made the representation that the Devices offered 16 gigabytes of storage, "16GB" or 16 billion bytes, in the following graphic:



compare the available storage on the Devices as compared to the storage capacity as advertised by Defendant.

[3] Since the initial filing of a related case making similar allegations, Apple has introduced newer models that are not marketed and advertised in relation to the available storage space in the same way as the Devices at issue here.

26.     In August 2015, Plaintiff Kempf purchased an iPad Air 2 Wi-Fi + Cellular represented by Apple to have 16GB of storage capacity from the AT&T Store located in Rockford, IL. The iPad Air 2 Wi-Fi + Cellular was purchased with iOS 8.1 pre-installed. Plaintiff Kempf purchased her iPad Air 2 Wi-Fi + Cellular primarily for personal, family, or household use.

27.     In December 2014, Plaintiff Walliser purchased a new iPhone 6 represented by Apple to have 16GB of storage capacity in Illinois. The iPhone 6 was purchased with iOS 8.1 pre-installed. Plaintiff Walliser purchased her iPhone 6 primarily for personal, family, or household use.

28.     In July 2016, Plaintiff Morgan purchased a new iPad Mini 3 represented by Apple to have 16GB of storage capacity in New Jersey from the mail order catalogue Fingerhut. The iPad Mini 3 was purchased with iOS 8.1 pre-installed. Plaintiff Morgan purchased his iPad Mini 3 primarily for personal, family, or household use.

29.     In December 2014, Plaintiff Ransom purchased a new iPhone 6 represented by Apple to have 16GB of storage capacity from a T-Mobile Store located in Audubon, New Jersey. The iPhone 6 was purchased with iOS 8.1 pre-installed. Plaintiff Ransom purchased her iPhone 6 primarily for personal, family, or household use.

30.     On December 11, 2014, Plaintiff Bennett purchased a new iPhone 6 represented by Apple to have 16GB of storage capacity from the Apple Store located in Ann Arbor, MI. The iPhone 6 was purchased with iOS 8.1 pre-installed. Plaintiff Bennett purchased his iPhone 6 primarily for personal, family, or household use.

31.     On January 17, 2015, Plaintiff Maxwell purchased a new iPad Air 2 Gold represented by Apple to have 16GB of storage capacity from a Sprint Store located in Seattle, WA. The iPad Air 2 Gold was purchased with iOS 8.1 pre-installed. Plaintiff Maxwell purchased her iPad Air 2 Gold primarily for personal, family, or household use.

32.     All Plaintiffs purchased their devices as a result of Defendant's omissions and claims, on its website, advertisements, product packaging, and other promotional materials, that the Device came equipped with 16GB of storage space without specifying how much Apple kept for itself. Plaintiffs viewed various materials, including Apple's website before purchasing their devices, as well as packaging and in-store product display materials at the time of making the purchases, which

specifically stated that the Device possessed 16GB of storage capacity. All Plaintiffs were willing to—and did in fact—pay more to acquire Devices with 16GB of storage capacity because they believed 16GB of storage capacity would be available for their personal use. In reliance on the fact that Apple specifically represented that the Devices had 16GB of storage capacity and omitted any mention of the substantial space it was keeping for itself, Plaintiffs, acting as reasonable consumers, expected that the full 16GB of capacity would be available for personal use. Absent that, the Devices would not have had the same monetary value. Had Plaintiffs known that the operating system and other mandatory pre-installed software consumed a substantial portion of the represented storage capacity, each Plaintiff would not have been willing to pay the same price for the Devices or would not have elected to purchase the undersized 16GB model. As a consequence of Apple's misrepresentations and omissions, Plaintiffs did not receive the benefit of the bargain.

33.    All Plaintiffs as reasonable consumers would not have expected (and could not have reasonably expected) that a shortfall ranging between 18.1–21.3% existed between the advertised and available capacity of the Devices they purchased.

34.    Since the filing of a related lawsuit alleging similar claims—and despite its intervening dismissal—Defendant no longer makes the same misleading representations to consumers about its storage capacity and Apple now permits consumers to delete unwanted applications.

35.    For the current version of the iPhone, iPhone 16, Defendant spells out specifically the amount utilized by Apple's operating system:

> Available space is less and varies due to many factors. A standard configuration uses approximately 12GB to 24GB of space, including iOS 18 with its latest features and Apple apps that can be deleted. Apple Intelligence on-device models can be deleted if Apple Intelligence is turned off and use approximately 7GB of space. Turning on Apple Intelligence will download the models again. Apple apps that can be deleted use about 4.5GB of space, and you can download them back

from the App Store. Storage capacity subject to change based on software version, settings, and iPhone model.[4]

36.    So, despite the fact that a higher percentage of storage capacity was unusable in the Devices, Apple now tells consumers how much storage capacity they cannot access for the most recent iPhone models and permits deletion of unwanted applications. However, because Apple did not disclose and in fact hid storage capacity information related to the Devices and the exact amount could not be discerned from any documents available at or prior to purchase of the Devices, Plaintiffs and the putative Class members purchased their Devices based on the reasonable understanding that they would have access to the full storage capacity (or nearly the full storage capacity) of the Devices.

37.    Storage capacity matters to ordinary and reasonable consumers (including Plaintiffs and putative Class members) precisely because of how it translates into their ability to store personal information after purchase and to comparison shop between competing manufacturers and between models within a manufacturer's line. Storage capacity constitutes a substantial consideration that weighs into reasonable consumers' decision-making processes. Consumers purchase Devices with greater storage capacity with the expectation that they will be able to store a greater amount of personal information on those Devices and delay having to purchase a replacement in the future. Indeed, this is why Apple makes representations regarding the storage capacity of its products and boasts to consumers that its Devices have 16GB of storage capacity. Moreover, within the same line of Devices, Apple understood that storage capacity was an important driver of or otherwise material to ordinary and reasonable customer purchasing decisions as Apple stated the capacity and varying price based upon the capacity to purchasers. To a consumer, the fact that a device has a particular storage capacity matters mostly because it impacts their ability to make use of that capacity. The fact that a device has a storage capacity is not valuable to a reasonable consumer if that consumer cannot actually make use of that capacity. Moreover, storage capacity was the principal price differentiator for the Devices. Unsurprisingly, higher storage capacity costs more.

---

[4] Language copied from https://www.apple.com/shop/buy-iphone/iphone-16 (last visited: June 20, 2025).

CLASS ACTION COMPLAINT

38.    Apple should have disclosed the actual storage capacity available to users for its various Devices and that upgrading to iOS 8 would result in a substantial decrease in available storage capacity. Had Plaintiffs known that the operating system and other pre-installed software consumes a substantial portion of the storage capacity of the Devices, they would have reconsidered their decisions to purchase Devices, or would have paid less. In the same vein, Apple's decision to include applications that are irrelevant to many consumers and cannot be deleted further reduced the storage available to consumers, adding insult to injury.

39.    Defendant employed false, deceptive, and misleading practices in connection with marketing, selling, and distributing the Devices. In its advertising, marketing, and promotional materials, including Apple's Internet website, product packaging, and product displays, Defendant misrepresented the iPhone 6 as having 16GB of storage capacity.

40.    Defendant's inclusion of the language that "actual formatted capacity less" did not render its representations any less false. Merriam-Webster defines "format" as "a method of organizing data (as for storage)." The reduction in the storage capacity available to Plaintiffs and consumers was not due to formatting, but was due instead to Defendants' direct consumption of the advertised storage to provide space for its operating system, pre-installed and mandatory applications, and self-allocated excess root partition. This dictionary definition is further reinforced by the Samsung disclaimer quoted above, as well as an Apple webpage posted after the class period.

41.    Apple's disclosures were not sufficient to put reasonable consumers—including Plaintiffs—on notice of the difference between the space promised and the space actually received. Each Plaintiff and every consumer saw a uniform misstatement on the packaging of every device and in Apple's other advertisements.

42.    Defendant knew, but concealed and failed to disclose in its advertising, marketing, and promotional materials, that the operating system and other pre-installed software consumed a substantial portion of the represented storage capacity of each of the Devices. Defendant also failed to disclose that consumers were forced to retain certain applications that significantly consumed the advertised storage capacity. These applications were not necessary for the Devices to function; they were merely a forced tool by which Apple could sell additional products or services.

43.     During the pertinent time period, the list of applications that could not be deleted included: calculator, calendar, camera, clock, compass, contacts, FaceTime, game center, iTunes store, mail, maps, messages, music, newsstand, notes, passbook, photos, reminders, Safari, stocks videos, voice memos, and weather. Thus, for a consumer who purchased a purported "16GB" iPhone, iPad, or iPod with iOS 8 pre-installed, as much as 21.3% of the represented storage capacity was inaccessible and unusable.

44.     The following table depicts the discrepancy between represented storage capacity, and storage capacity actually available to purchasers, on certain iPhones and iPads with iOS 8 installed:

| Device | Represented Capacity | Capacity Available to User | | Capacity Unavailable to User | |
|---|---|---|---|---|---|
| | (GB) | (GB) | (GB) | (GB) | (%) |
| iPhone 6 Plus | 16 | 11.8 | 12.7 | 3.3 | 20.6% |
| iPhone 6 | 16 | 12.1 | 13.0 | 3.0 | 18.8% |
| iPhone 5s | 16 | 12.2 | 13.1 | 2.9 | 18.1% |
| iPad Air | 16 | 11.7 | 12.6 | 3.4 | 21.3% |
| iPad | 16 | 11.7 | 12.6 | 3.4 | 21.3% |

45.     The foregoing actual capacities are further confirmed by reports from several purchasers and bloggers reported on various websites. For example, a purchaser complained that his new iPhone 4 with a represented capacity of 8GB had only 6.37 GB of storage. An Apple representative conceded that "that is normal" and suggested that, if the user did "not like it," to "take it back." See https://discussions.apple.com/thread/3558683. A blogger, similarly, reported that a "16GB" iPad only affords 13GB of usable storage, and noted that "selling a 16GB iPad that really only has 13GB available (after iOS is installed) – is deceptive." See http://www.mcelhearn.com/apples-ios-apps-are-bloated-and-how-many-gigs-do-you-get-on-a-16-gb-ios-device/. See also David Price, "What's the true formatted storage capacity of an iPhone, iPad or iPod?" (February 9, 2016), https://www.macworld.com/article/671107/whats-the-true-formatted-storage-capacity-of-an-iphone-ipad-or-ipod.html; http://www.imore.com/16gb-vs-64gb-vs-128gb-which-iphone-6-and-iphone-6-plus-storage-size-should-you-get ("out of 16GB of storage you get

only 12~13"). Given Apple's technological sophistication (having designed the iOS, created the root partition, and programmed the forced applications), media coverage addressing the issue, and complaints received directly from consumers, it is beyond question that Apple was aware of this misrepresentation.

46.    Apple's misrepresentations and omissions were deceptive and misleading because they omitted material facts that an average consumer would consider in deciding whether to purchase its products, namely, that when using iOS 8, as much as 3.7 GB of the represented storage capacity on a device represented to have 16GB of storage capacity was, in fact, not available to the purchaser for storage. For example, Apple misrepresented that an iPhone 6 Plus with the base level of storage had "16GB" of storage space while it concealed, omitted and failed to disclose that, on models with iOS 8 pre-installed, in excess 20% of that space was not available storage space that the purchaser could access and use to store his or her own files.

47.    Apple exploited the discrepancy between represented and available capacity for its own gain by offering to sell, and by selling, cloud storage capacity to purchasers whose internal storage capacity is at or near exhaustion. During the time period relevant to this complaint, when the internal hard drive approached "full," Defendants caused a pop-up ad to offer consumers the opportunity to purchase "iCloud" cloud storage. For this service, at all times relevant to this complaint, Apple charged prices ranging from $0.99 to $29.99 per month.

48.    This iCloud storage was the only practical way for consumers to obtain additional storage. Apple operates in a closed system—it does not allow users to insert an SD card or other internal storage medium (unlike certain competitors' smartphones at the time, including most phones that used the Android operating system at the time the original complaint in this action was filed). Similarly, at all times relevant to this complaint, Apple also did not permit users to freely transfer files between the Devices and a computer by using a "file manager" utility – an option available to most users of Android or Windows-based portable devices.

49.    Plaintiffs hereby bring this class action seeking redress for Defendant's unfair business practices, false or deceptive or misleading advertising, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ILCS"), 815 ILCS 505, *et seq.*

**CLASS ACTION ALLEGATIONS**

50.     This action may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.

51.     Plaintiffs Kempf and Walliser bring this action as a class action on behalf of themselves and the following class ("the Illinois Class"): all persons who purchased new 16GB iPhones or iPads in Illinois with iOS 8 preinstalled, between September 17, 2014, and September 30, 2016, for purposes other than resale or distribution.

52.     Plaintiffs Morgan and Ransom bring this action as a class action on behalf of themselves and the following class ("the New Jersey Class"): all persons who purchased new 16GB iPhones or iPads in New Jersey, with iOS 8 preinstalled, between September 17, 2014, and September 30, 2016, for purposes other than resale or distribution.

53.     Plaintiff Bennett brings this action as a class action on behalf of himself and the following class ("the Michigan Class"): all persons who purchased new 16GB iPhones or iPads in Michigan, with iOS 8 preinstalled, between September 17, 2014, and September 30, 2016, for purposes other than resale or distribution.

54.     Plaintiff Maxwell brings this action as a class action on behalf of herself and the following class ("the Washington Class"): all persons who purchased new 16GB iPhones or iPads in Washington with iOS 8 preinstalled, between September 17, 2014, and September 30, 2016, for purposes other than resale or distribution.

55.     Excluded from the Classes are the Defendant, and all officers, directors, employees, or agents of the Defendant.

56.     The members of the Classes are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendant. Plaintiffs, however, believe that the Classes encompass many thousands of individuals.

57.     There are common questions of law or fact, among others, including:

    a.     The nature, scope and operations of the wrongful practices of Apple;

b.  Whether Defendant knew the advertised storage capacity was not fully available on the purchased Devices and did not provide purchasers with information to determine what Apple was keeping for itself at the time of purchase;

c.  Whether Defendant's advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive a reasonable or ordinary consumer;

d.  Would a reasonable or ordinary consumer understand "less" to be up to, or in excess of 21% of the available storage space;

e.  What percentage of the reasonable person consuming public understood that 16GB was not actually 16GB, whether the "less" disclaimer was understood as more than 21% of the storage, the exact amount of capacity being used by each individual app or partition, or understood that certain content could not be deleted without voiding the product warranty;

f.  Whether Defendant knew that its representations and/or omissions regarding the Devices' storage capacity were false or misleading by omission, but continued to make them;

g.  Whether Apple's partial disclosure as to the Devices' storage capacity created a duty to disclose the amount of storage space actually unavailable to class members;

h.  Whether Defendant's failure to disclose the amount of storage space consumed by its operating system and other pre-installed software was a material fact;

i.  Whether Defendant's failure to disclose the available storage on the Apple devices confused consumers who were comparing the available storage on devices manufactured by others;

j.  Whether Apple's forced inclusion of software violates the laws cited herein;

k.  Whether Apple's partition of storage space beyond that necessary to operate the devices is actionable misconduct;

l.  Whether the value of the Devices is decreased based on the actual available storage capacity to consumers;

CLASS ACTION COMPLAINT

m.  Whether storage capacity was material to an ordinary or reasonable consumer when making a purchasing decision;

n.  Whether Defendant's conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*;

o.  Whether Defendant's conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq.;

p.  Whether Defendant's conduct violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Law § 445.901 et seq.;

q.  Whether Defendant's conduct violation the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010, et seq.;

r.  Whether, as a result of Apple's misconduct as set forth in this Complaint, Plaintiffs and the Classes are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief; and

s.  Whether Apple has acted on grounds generally applicable to the Class, making injunctive relief appropriate.

58.     Plaintiffs' claims are typical of the members of the Classes because Plaintiffs and all members of the Classes were injured by the same wrongful practices of Apple as described in this complaint. Plaintiffs' claims arise from the same practices and course of conduct that gives rise to the claims of the Classes' members, and are based on the same legal theories. Plaintiffs have no interests that are contrary to or in conflict with those of the Classes they seek to represent.

59.     Plaintiffs will fairly and adequately represent the interests of the members of the Classes. Plaintiffs' interests are the same as, and not in conflict with, the other members of the Classes. Plaintiffs' counsel is experienced in class action and complex litigation.

60.     Questions of law or fact common to the members of the Classes predominate and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by Classes members are likely to be in the millions of dollars, the individual damages incurred by each Class

member resulting from Apple's wrongful conduct are, as a general matter, too small to warrant the expense of individual suits. The likelihood of individual members of the Classes prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action and certification of the Classes is proper.

61.     Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper on the additional ground that Apple has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of each Class as a whole.

## STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS

62.     Each Plaintiff and each member of the Classes was a member of the putative class in a related class action filed on December 30, 2014, *Orshan et al. v. Apple Inc.*, Case No. 5:14-cv-5659 (N.D. Cal.), as alleged in the complaint and amended complaints in that action.

63.     The original complaint alleged a class with the following definition: "all persons or entities in the United States who purchased an iPhone, iPod or iPad with represented storage capacity of 16 GB or less with iOS 8 pre-installed for purposes other than resale or distribution."

64.     The *Orshan* complaint and amended complaints allege substantially similar facts, are based on similar evidence, bring similar claims, and involve the same defendant as the instant action. Defendant was therefore placed on notice of the claims.

65.     On October 13, 2023, the *Orshan* plaintiffs sought certification of the following nationwide class, of which each Plaintiff and member of the Classes is a member: "All persons who purchased new 16GB iPhones or iPads in the United States between September 17, 2014, and September 30, 2016, with iOS 8 preinstalled."

66.     On September 30, 2024, the district court denied the *Orshan* Plaintiffs' motion to certify a nationwide class, certifying only a class of California purchasers.

67.     Plaintiffs and each member of the Classes would have been parties had the *Orshan* litigation been permitted to continue as a class action. The statutes of limitations applicable to Plaintiffs' and the Class members' claims was tolled until the district court denied class certification.

**COUNT I**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**("ILCS"), 815 ILCS 505, *et seq.***
**(Plaintiffs Kempf and Walliser, individually and on behalf of the Illinois Class)**

68.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

69.     Plaintiffs Kempf and Walliser bring this cause of action individually and on behalf of the Illinois Class.

70.     Defendant has violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.* by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of Illinois, unfair, deceptive, untrue, or misleading advertising as set forth above in this Complaint.

71.     Defendant's practices are likely to deceive, and have deceived, members of the public.

72.     Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

73.     Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

74.     By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*

75.     Plaintiffs Kempf and Walliser and all members of the Illinois Class suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiffs Kempf and Walliser and members of the Illinois Class were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these misrepresentations, and suffered monetary loss as a result.

76.     Plaintiffs Kempf and Walliser, individually and on behalf of the Illinois Class, seek an order of this Court against Defendant awarding damages, restitution, disgorgement, injunctive relief and all other relief allowed under Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*, plus interest, attorneys' fees and costs.

**COUNT II**
**New Jersey Consumer Fraud Act ("NJCFA")**
**N.J. Stat. Ann. § 56:8-1, et seq.**
**(Plaintiffs Morgan and Ransom, individually and on behalf of the New Jersey Class)**

77.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

78.     Plaintiffs Morgan and Ransom bring this cause of action on their own behalf and on behalf of the members of the New Jersey Class.

79.     Defendant, Plaintiffs Morgan and Ransom, and the New Jersey Class Members are "persons" within the meaning of the New Jersey Consumer Fraud Act ("New Jersey CFA"), N.J. Stat. Ann. § 56:8-1(d).

80.     Defendant engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

81.     The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2. Defendant engaged in unconscionable commercial practice or

deceptive acts or practices that violated the NJCFA as described above and below, and did so with the intent that Plaintiffs rely upon their acts of concealment, suppression and/or omission.

82.    Defendant has violated the NJCFA by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated in the State of New Jersey, unfair, deceptive, untrue, or misleading advertising as set forth above in this Complaint.

83.    Defendant's practices are likely to deceive, and have deceived, members of the public.

84.    Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclose and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

85.    Defendant continued to make such misrepresentations or failed to correct omissions despite the fact it knew or should have known that its conduct was misleading and deceptive.

86.    By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of NJCFA.

87.    Plaintiffs Morgan and Ransom and all members of the New Jersey Class suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiffs Morgan and Ransom and members of the New Jersey Class were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these uncorrected omissions or misrepresentations, and suffered an ascertainable loss as a result.

88.    Plaintiffs Morgan and Ransom, individually and on behalf of the New Jersey Class, seek an order of this Court against Defendant awarding damages, restitution, disgorgement, injunctive relief and all other relief allowed under the NJCFA, plus interest, attorneys' fees and costs.

**COUNT III**
**Michigan Consumer Protection Act ("MCPA")**
**Mich. Comp. Law § 445.901 et seq.,**
**(Plaintiff Bennett, individually and on behalf of the Michigan Class)**

CLASS ACTION COMPLAINT

89.     Plaintiffs repeat and reallege the allegations set forth above as if fully contained herein.

90.     Plaintiffs Bennett brings this cause of action individually and on behalf of the Michigan Class.

91.     Defendant has violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Law § 445.901 et seq., by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of Michigan, unfair, deceptive, untrue, or misleading advertising as set forth above in this Complaint.

92.     Defendant's practices are likely to deceive, and have deceived, members of the public.

93.     Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclose and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

94.     Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

95.     By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of the MCPA.

96.     Plaintiff Bennett and all members of the Michigan Class suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiff Bennett and members of the Michigan Class were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these misrepresentations, and suffered monetary loss as a result.

97.     Plaintiff Bennett, individually and on behalf of the Michigan Class, seeks an order of this Court against Defendant awarding damages, restitution, disgorgement, injunctive relief and all other relief allowed under the MCPA, plus interest, attorneys' fees and costs.

**COUNT IV**
**Washington Consumer Protection Act ("WCPA")**
**Wash. Rev. Code § 19.86.010, et seq.**
**(Plaintiff Maxwell, individually and on behalf of the Washington Class)**

20

98.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

99.     Plaintiff Maxwell brings this cause of action on his own behalf and on behalf of the Washington Class.

100.    Plaintiff Maxwell, individually and on behalf of Washington Class members, served a copy of this Amended Complaint on the Washington State Office of the Attorney General contemporaneously with filing this Complaint. *See* RCW 19.86.095; Fed. R. Civ. P. 5(b)(2)(C).

101.    Plaintiff Maxwell and Washington Class members (as natural persons and other entities) and Defendant (as a corporation) are each "[p]erson[s]" within the meaning of RCW 19.86.010(1).

102.    The devices described in the Washington Class definition are "[a]ssets" within the meaning of RCW 19.86.010(3).

103.    Washington's Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Wash. Rev. Code § 19.86.020.

104.    Defendant has violated WCPA by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated in the State of Washington, unfair, deceptive, untrue, or misleading advertising as set forth above in this Complaint.

105.    Defendant's practices are likely to deceive, and have deceived, members of the public.

106.    Defendant knew, or should have known, that its omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

107.    Defendant continued to make such omissions and misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

108.    Defendants' deceptive conduct alleged herein violated the following provisions of Washington's Consumer Protection Act RCW Section 19.86.020, by negligently, recklessly, and/or

intentionally omitting or otherwise misrepresenting the storage capacity available to consumers for their own use at the time of purchase and otherwise preventing ordinary and reasonable consumers from calculating the amount for each usage Apple was keeping for itself.

109.    Defendants' deceptive trade practices, including but not limited to, their  misleading omissions, deceived Washington consumers because the amount of storage capacity Apple was keeping for itself and that would not be available to plaintiffs and class members was material to purchasing decisions as alleged above.

110.    By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of WCPA.

111.    Plaintiff Maxwell and all members of the Washington Class suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiff Maxwell and members of the Washington Class were exposed to these misrepresentations and omissions, purchased a Device(s) in reliance on these misrepresentations, and suffered monetary loss as a result.

112.    Plaintiff Maxwell, individually and on behalf of the Washington Class, seeks an order of this Court against Defendant awarding damages, restitution, disgorgement, injunctive relief and all other relief allowed under WCPA plus interest.

113.    Under RCW 19.86.090, Plaintiff Maxwell and the Washington Class members request that this Court treble the award of damages. Such an exercise of the Court's discretion is warranted because Defendant willfully and knowingly violated RCW 19.86.020.

114.    Under RCW 19.86.090, Plaintiff Maxwell and the Washington Class members further request that this Court award their reasonable attorneys' fees and costs.

### **Prayer for Relief**

WHEREFORE, Plaintiffs pray:

a.    That this matter be certified as a class action with the Class defined as set forth above under pursuant to Fed. R. Civ. P. 23 and that the Plaintiffs be appointed Class Representatives, and their attorneys be appointed Class Counsel.

CLASS ACTION COMPLAINT

1    b.    That the Court enter an order requiring Defendant to immediately cease the wrongful

2 conduct as set forth above; enjoining Defendant from continuing to conduct business via the

3 unlawful and unfair business acts and practices complained of herein; and ordering Defendant to

4 engage in a corrective notice campaign;

5    c.    That judgment be entered against Defendant for restitution, including disgorgement

6 of profits received by Defendant as a result of said purchases, cost of suit, and attorneys' fees, and

7 injunction; and

8    d.    For such other equitable relief and pre- and post-judgment interest as the Court may

9 deem just and proper.

10                                    **Jury Demand**

11    Plaintiffs hereby demand a trial by jury.

12

13 Dated: June 23, 2025                     Respectfully submitted,

14

15                          /s/ Michael McShane
                            MICHAEL MCSHANE (SBN 127944)
16                          THOM E. SMITH (SBN 203362)
                            **AUDET & PARTNERS, LLP**
17                          711 Van Ness Avenue, Suite 500
                            San Francisco, CA 94102
18                          Telephone: (415) 568-2555
                            Facsimile: (415) 576-1776
19                          mmcshane@audetlaw.com
                            tsmith@audetlaw.com
20

21                          WILLIAM ANDERSON (*Pro Hac Vice forthcoming*)
                            **HANDLEY FARAH & ANDERSON PLLC**
22                          1434 Spruce Street, Suite 301
                            Boulder, CO 80302
23                          Telephone: (303) 800-9109
                            Facsimile: (844) 300-1852
24                          wanderson@hfajustice.com

25                          REBECCA P. CHANG (*Pro Hac Vice forthcoming*)
26                          NICHOLAS J. JACKSON (*Pro Hac Vice forthcoming*)
                            **HANDLEY FARAH & ANDERSON PLLC**
27                          33 Irving Pl.
                            New York, NY 10003
28                          Telephone: (303) 800-9109

                                        23

rchang@hfajustice.com

CHARLES J. LADUCA (*Pro Hac Vice forthcoming*)
**CUNEO GILBERT & LADUCA LLP**
2445 M Street, N.W.
Suite 740
Washington, D.C. 20037
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charlesl@cuneolaw.com

ROBERT SHELQUIST (*Pro Hac Vice forthcoming*)
**CUNEO GILBERT & LaDUCA, LLP**
5775 Wayzata Blvd.,
Suite 620
St. Louis Park, Minnesota 55416
Telephone: (612) 254-7288
Email: rshelquist@cuneolaw.com

JON M. HERSKOWITZ (*Pro Hac Vice forthcoming*)
**BARON & HERSKOWITZ**
9100 S. Dadeland Blvd.
Suite 1704
Miami, Fl. 33156
Telephone (305) 670-0101
Facsimile. (305) 670-2393
jon@bhfloridalaw.com

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT