UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIM KEMPF, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:25-cv-05244-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 18 |

Plaintiffs Kim Kempf, Gail Walliser, Jeremy Morgan, Delettra Ransom, Xavier Bennett, and Cassaundra Maxwell (collectively, "Plaintiffs") bring this putative class action individually and on behalf of all others similarly situated, alleging that Defendant Apple Inc. ("Apple") misled consumers about the available storage capacity of certain smartphone and tablet devices running Apple's iOS 8 operating system. Plaintiffs claim that Apple made misrepresentations and omissions in violation of four state consumer protection statutes. Compl., ECF No. 1.

Before the Court is Apple's motion to dismiss the Complaint under Rule 12(b)(6) and 9(b), or in the alternative, strike all class allegations under Rule 23(d)(1)(D). Mot., ECF No. 18. The motion is fully briefed, and the Court finds the matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). After careful consideration, the Court **GRANTS IN PART** and **DENIES IN PART** Apple's motion.

## I.    BACKGROUND

The facts of this case are not new to the Court. More than a decade ago, other named plaintiffs brought nearly identical claims on behalf of putative California and nationwide classes in a case before this Court. *Orshan v. Apple*, No. 5:14-cv-05659 (N.D. Cal.) ("*Orshan*"). In

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

1

September 2024, the Court declined to certify any nationwide class in *Orshan*, finding that common legal issues did not predominate on a nationwide basis because the class claims involved the application of materially different state laws. *Orshan*, ECF No. 228 at 24. Plaintiffs in this case were part of that putative nationwide class. On June 23, 2025, about nine months after class certification was denied, Plaintiffs filed the instant action, raising substantially similar claims under Illinois, New Jersey, Michigan, and Washington law. *See* Compl. ¶¶ 62–64 (alleging that the complaints in *Orshan* "allege substantially similar facts, are based on similar evidence, bring similar claims, and involve the same defendant as the instant action").

As in *Orshan*, Plaintiffs claim that Apple misrepresented the available storage capacity of 16 GB iPhones and iPads with iOS 8 preinstalled. *Id.* ¶ 1. Apple allegedly advertised that 16 GB iPhones and iPads would give users the full 16 GB of storage space for their personal use, when in reality, consumers could not access a portion of that space occupied by the iOS 8 operating system and unremovable applications. *Id.* ¶¶ 32–33. Plaintiffs assert that Apple's misrepresentations and omissions violate four state consumer protection laws: the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505, *et seq.*, Compl. ¶¶ 68–76 (Count I); the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*, Compl. ¶¶ 77–88 (Count II); the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Law § 445.901, *et seq.*, Compl. ¶¶ 89–97 (Count III); and the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010, *et seq.*, Compl. ¶¶ 98–114 (Count IV).

Plaintiffs bring their claims in their individual capacities and on behalf of four putative classes of purchasers from their respective states. Compl. ¶¶ 51–54. Specifically, they propose state classes of "all persons who purchased new 16GB iPhones or iPads in [Illinois, New Jersey, Michigan, and Washington] with iOS 8 preinstalled, between September 17, 2014, and September 30, 2016, for purposes other than resale or distribution." *Id.*

## II.    LEGAL STANDARD

To survive dismissal, Plaintiffs' complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662,

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
2

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). The Court accepts well-pled allegations in the Complaint as true but does not afford unsupported legal conclusions the same treatment. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As such, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient to state a plausible claim for relief. *Id.*

For claims sounding in fraud, Plaintiffs must also satisfy Rule 9(b)'s heightened pleading standard. Rule 9(b) requires that Plaintiffs "state with particularity the circumstances constituting fraud or mistake" (Fed R. Civ. P. 9(b)), including the "who, what, when, where, and how of the misconduct charged." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). To satisfy this standard, Plaintiffs must allege what is false or misleading about Apple's statements and why they are false. *Id.* (citation omitted).

Additionally, Rule 23(d)(1)(D) provides that a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Class allegations may be stricken at the pleading stage if the complaint has "obvious defects," such as timeliness, "that cannot be cured through class discovery and the class certification process." *See Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012); *Torres v. Wells Fargo Bank*, 2018 WL 6137126, at *4 (C.D. Cal. Aug. 28, 2018) (striking class allegations as untimely).

## III.    DISCUSSION

In its motion, Apple asserts four grounds for dismissal. *First*, Plaintiffs' class claims under Illinois, New Jersey, and Michigan law are time-barred under the relevant statutes of limitations, and the class-action tolling doctrine is inapplicable. *Second*, all of Plaintiffs' Washington-law claims are untimely under the WCPA's statute of limitations and were not equitably tolled. *Third*, Plaintiffs fail to plausibly allege that reasonable consumers would be deceived by Apple's "16 GB" statements. And *fourth*, Plaintiffs have not pled their claims with the particularity required by Rule 9(b). The Court takes each in turn.

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

United States District Court
Northern District of California

### A.    Statutes of Limitations and Tolling

A claim may be dismissed under Rule 12(b)(6) when it is "apparent on the face of the complaint" that the claim is "barred by the applicable statute of limitations." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  Dismissal for this reason is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Here, Plaintiffs base their causes of action on four state statutes, each of which sets forth a statute of limitations for bringing claims.  Those time limits are as follows:

*Illinois.*  A claim brought pursuant to the ICFA must be "commenced within 3 years after the cause of action accrued" or is otherwise "forever barred." 815 Ill. Comp. Stat. 505/10a.

*New Jersey.*  A claim under the NJCFA is governed by a six-year statute of limitations. N.J. Stat. Ann. § 2A:14–1.

*Michigan.*  A claim brought pursuant to the MCPA must be brought within "6 years after the occurrence of the method, act, or practice that is the subject of the action."  Mich. Comp. Laws § 445.911(7).

*Washington.*  A claim brought pursuant to the WCPA "shall be forever barred unless commenced within four years after the cause of action accrues."  Wash. Rev. Code § 19.86.120.

Plaintiffs allege that their four proposed classes comprise individuals who purchased Apple devices between September 17, 2014, and September 30, 2016.  Compl. ¶¶ 51–54.  At the latest, the class claims would have accrued—and the statutes of limitations began to run—on the last applicable date of purchase on September 30, 2016.[1]  *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 607 (3d Cir. 2018) (calculating statute of limitations for class claims based on last date of alleged injury).  Accordingly, all of Plaintiffs' class claims expired between September 2019

---

[1] The exact date on which Plaintiffs' claims accrued is not at issue, because Plaintiffs themselves allege that their claims are timely solely based on tolling during the *Orshan* litigation.  Compl. ¶ 67.

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
4

and September 2022.  Plaintiffs initiated this action in June 2025, after the last statute of limitations had expired.  Plaintiffs do not necessarily dispute this.  They contend, however, that their claims were tolled by the *Orshan* litigation from the date that action was filed (December 30, 2014) until September 30, 2024, when the Court denied certification of a nationwide class.  Compl. ¶¶ 62–67.

Apple concedes that Plaintiffs are correct with regard to the *individual* claims brought by Plaintiffs Kempf, Walliser, Morgan, Ransom, and Bennett, but disagrees with respect to their putative *class* claims.  Apple argues that, under Supreme Court precedent, tolling is not available for the class claims based on Illinois, New Jersey, and Michigan law.  Further, Apple argues that none of Plaintiffs' Washington-law claims are timely because Washington's equitable tolling doctrine is inapplicable.

### 1.     Judicial Estoppel

Before turning to the merits of Apple's argument, the Court addresses a threshold issue.  Plaintiffs argue that Apple should be judicially estopped from even arguing that their claims are time-barred because Apple benefited from a contrary representation to the Ninth Circuit in the related *Orshan* litigation.  In *Orshan*, Plaintiffs petitioned for interlocutory review of the Court's class certification order under Rule 23(f) and challenged the decision to deny certification of a nationwide class.  *Orshan v. Apple*, No. 24-6271 (9th Cir.).  In its opposition to the petition, Apple explained that this Court's decision was not a "death knell" for claims by non-California class members because they "remain[ed] free to pursue claims against Apple based on their own states' consumer-protection laws—either individually or as a class."  *Id.*, ECF No. 4.1 at 22–23.  Plaintiffs contend that Apple obtained denial of the Rule 23(f) petition based on this representation, so Apple should be precluded from asserting its contrary statute-of-limitations defense here.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citations

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
5

omitted).  The application of the doctrine is within the discretion of the district court.  *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012).  Courts consider three factors in determining whether to apply judicial estoppel: (1) whether the party's current position is "clearly inconsistent" with its earlier position, (2) whether the party was successful in persuading a court to accept the earlier position, and (3) whether the party seeking to assert the inconsistent position would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Applied here, the *New Hampshire* factors weigh against judicial estoppel.  Apple's current position—that statutes of limitations preclude Plaintiffs' claims—may appear at first blush to contradict its representation before the Ninth Circuit.  Apple told the circuit court that Plaintiffs could pursue claims based on their own states' laws yet argues here that Plaintiffs cannot.  However, that apparent inconsistency becomes less clear when considered in context.  Apple made the statement specifically in response to Plaintiffs' position that denial of nationwide class certification amounted to a "death knell" that would preclude out-of-state plaintiffs from pursuing claims under California law.  Apple made no representation about the timeliness of Plaintiffs' claims, nor was timeliness an issue on appeal.  Rather, Apple argued that Plaintiffs were incorrectly focusing on their ability to assert claims under California law without explaining why they could not assert the same claims under other states' laws.  Apple's current position is thus not "clearly inconsistent" with its position in *Orshan*.

As for the second factor, it is unclear whether Apple was successful in persuading the Ninth Circuit to accept Apple's position.  The appellate court did not specify which arguments it credited and which it rejected in its one-page denial, nor is that distinction evident from the Circuit's holding.  *Orshan*, 24-6271, ECF No. 7.1.  The Court therefore considers the second factor to be neutral.

The third *New Hampshire* factor (unfair detriment) also cuts against judicial estoppel.  Plaintiffs argue that, without estoppel, they would suffer an unfair detriment because Apple's statute-of-limitations argument would bar them from bringing claims under their own states' laws

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
6

United States District Court
Northern District of California

after their California claims were dismissed in *Orshan*. But that is only partially true. Apple does seek to bar Plaintiffs' class claims here but acknowledges that non-California class members can still pursue individual claims where tolling is available. That Plaintiffs' right to pursue these claims as a class action has expired under the relevant statutes of limitations is not, by itself, an unfair detriment.

The Court is not swayed by *Hersh v. Nat'l Found. Life Ins. Co.*, No. C-11-03289, 2012 WL 381173 (N.D. Cal. Feb. 6, 2012), a case Plaintiffs cite in support of judicial estoppel. There, the defendant succeeded in having a Florida court dismiss the plaintiff's case for forum non conveniens by representing that "Plaintiff can certainly reinstate her lawsuit in the proper venue in the State of California or Texas." *Id.* at *4. The plaintiff subsequently filed in the Northern District of California, and the defendant once again moved to dismiss, this time arguing that the plaintiff's claims had expired under California's statute of limitations. *Id.* The *Hersh* court judicially estopped the defendant from asserting this statute of limitation bar based on the three *New Hampshire* factors. *Id.* at *4–5.

To be sure, *Hersh* bears obvious similarities to the instant action. But the case is still distinguishable. The defendant in *Hersh* told the Florida court that California was a "proper venue" and thus specifically "represented . . . that California was a forum in which Plaintiff could timely bring her claim." *Id.* at *5. Here, in contrast, Apple made no such specific representation. Apple stated that Plaintiffs were "free to pursue" their claims under other states' laws, not necessarily that those claims would be timely or meritorious in any state of Plaintiffs' choosing.

The Court therefore declines to judicially estop Apple from asserting its statute-of-limitations defense and proceeds to address Apple's arguments.

**2.    Tolling of Illinois, New Jersey, and Michigan Class Claims**

In *American Pipe Const. Co. v. Utah*, the United States Supreme Court established that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). The statute "remains tolled for all members of the

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
7

United States District Court
Northern District of California

putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983). "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* This rule, also called the class-action tolling doctrine, comes with a limitation. As the Supreme Court explained in 2018, class-action tolling under *American Pipe* only applies to new *individual* actions and does not extend to *class* actions filed after certification of an earlier class action is denied. *China Agritech v. Michael H. Resh*, 584 U.S. 732, 736 (2018). This is so because the "efficiency and economy of litigation" that support tolling of individual claims do not support maintenance of successive class actions. *Id.* at 740.

Apple argues that *American Pipe* tolling is not available for Plaintiff's class claims based on Illinois, New Jersey, and Michigan law. According to Apple, *China Agritech* excluded such class claims from the scope of class-action tolling, and without tolling, Plaintiffs' claims are untimely. Plaintiffs, on the other hand, say that Apple cites the wrong law. They contend that *American Pipe* and its progeny are irrelevant because those cases set forth federal tolling rules, and there are no claims arising under federal law here. Plaintiffs' claims are based on violations of state consumer protection statutes, so they argue state law controls.

To an extent, the Parties agree. Apple does not dispute that state law governs the statute of limitations and tolling issues here. *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (state statutes of limitations and tolling rules are considered substantive law); *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1110 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 749 (9th Cir. 2016) (federal courts sitting in diversity jurisdiction apply state law with "respect to the tolling of statutes of limitations and the treatment of class action lawsuits."). Where the Parties diverge is on the issue of what effect, if any, *American Pipe* and its progeny have on state law.

In this regard, Plaintiffs' argument that *American Pipe* is irrelevant to this case goes too far. Plaintiffs ignore that Illinois, New Jersey, and Michigan explicitly adopted and modeled their class-action tolling laws on *American Pipe*. *See, e.g.*, *Steinberg v. Chi. Med.*, 69 Ill. 2d 320, 342 (1977); *Mungiello v. Fed. Express*, 2016 WL 6833070, at *3 (N.J. App. Div. Nov. 21, 2016); *Cowles v. Bank W.*, 719 N.W.2d 94, 103 (Mich. 2006). In Apple's view, *China Agritech*

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

subsequently limited the scope of *American Pipe*, so the later holding should also limit class-action tolling in states that have adopted the *American Pipe* rule. Plaintiffs disagree. They point out that Illinois, New Jersey, and Michigan have not explicitly adopted *China Agritech*'s bar on successive class actions. As such, Plaintiffs maintain that the Court should apply each state's equitable tolling principles as they are. The question facing the Court, then, is whether Illinois, New Jersey, and Michigan's adoption of the *American Pipe* tolling doctrine incorporates subsequent Supreme Court case law clarifying that doctrine's scope.

The Court begins to answer that question by observing that the highest courts of Illinois, New Jersey, and Michigan have yet to determine whether *China Agritech*'s limitation applies to their respective state's tolling laws. Neither party cites any authority to suggest otherwise, nor could the Court find any. "When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its own best judgment in predicting how the state's highest court would decide the case." *Fast Trak Inv. Co., LLC v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020) (internal quotations omitted). In making this prediction, courts consider "all available data." *Id.* (citations omitted).

For their part in this inquiry, Plaintiffs cite cases in which Illinois, New Jersey, and Michigan courts have permitted tolling for successive class actions. *See Cowles*, 719 N.W.2d at 110 (tolling successive class action in Michigan where "the initial class action was decertified on grounds other than the appropriateness of the substantive claims for class treatment"); *Crump v. Passaic Cty.*, 147 F. Supp. 3d 249, 261 (D.N.J. 2015) (same in New Jersey for later class action that asserted "substantively identical" claims as in the initial class action); *Villanueva v. Davis Bancorp, Inc.*, No. 09 CV 7826, 2011 WL 2745936, at *4 (N.D. Ill. July 8, 2011) (same in Illinois where "issues decided during the course of the first class action lawsuit do not preclude certification of a second class because of collateral estoppel"). According to Plaintiffs, these cases indicate that the highest courts in the relevant states would reject *China Agritech*, because the Supreme Court's holding would conflict with existing state law precedent. However, the probative value of these cases is somewhat diminished by their timing. They came years before

United States District Court
Northern District of California

the 2018 decision in *China Agritech* and thus did not have the benefit of seeing the Supreme Court's consideration of the issue. State courts can and do change their minds in light of new guidance from the United States Supreme Court. *See, e.g.*, *Fierro v. Landry's Rest.*, 32 Cal. App. 5th 276, 291–97 (2019) (holding that earlier California cases inconsistent with *China Agritech* "are no longer good law").

That said, the cases Plaintiffs cite are instructive because they demonstrate the kind of analysis state courts conduct when faced with questions like the one here. Viewed through that lens, the cases exhibit a common theme: courts observe a lack of controlling state court authority on the issue, look to federal cases on point, and aim to develop a rule consistent with federal precedent. *See Cowles*, 719 N.W.2d at 110 (noting that its holding is "consistent with American Pipe and its progeny"); *Crump*, 147 F. Supp. 3d at 261 ("This is consistent with the *American Pipe* decision . . . ."); *Villanueva*, 2011 WL 2745936 at \*4 (noting that "*American Pipe* and *Crown, Cork* do not address whether the statute of limitations should be tolled if the second case to proceed is, like the first case, a class action," but following a Seventh Circuit rule that "is consistent with *American Pipe* and the Illinois courts' adoption of class action tolling"). This is unsurprising given general state court practice. Where, as here, a state rule is based on a federal counterpart, state courts in Illinois, New Jersey, and Michigan regularly look to federal case law for guidance. *See, e.g.*, *Platinum Partners v. Chi. Bd. Options Exch.*, 976 N.E.2d 415, 424–25 (Ill. App. Ct. 2012) ("Illinois courts tend to look to federal precedent in interpreting state law." (citations omitted)); *Tractenberg v. Twp. of W. Orange*, 4 A.3d 585, 594 (N.J. Super. App. Div. 2010) (observing that New Jersey courts have a "long history of looking to federal law where there is a dearth of state court decisions interpreting a state statute or rule but there are federal decisions interpreting comparable federal law"); *State Emps. v. Dep't of Mgmt.*, 404 N.W.2d 606, 612 (Mich. 1987) ("It is appropriate to look to federal case law when interpreting a state statute which parallels its federal counterpart.").

With that in mind, the Court predicts that the highest courts in these states would adopt *China Agritech* and apply the holding to this case. State courts regularly incorporate guidance

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
10

United States District Court
Northern District of California

United States District Court
Northern District of California

from federal authority interpreting and applying *American Pipe*, so it follows that they would afford *China Agritech* the same treatment.  And the reasoning underlying *China Agritech* supports its application in this case.  There, the Supreme Court rejected tolling for successive class actions because it would result in "endless tolling" where "the statute of limitations [would] be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *China Agritech*, 584 U.S. at 743–44.  This would achieve the exact opposite of the "efficiency and economy of litigation" that animate *American Pipe* and Rule 23.  *Id.* at 748.  Instead, the Supreme Court held that "any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* at 740.  The high court reasoned that doing so would "aid a district court in determining, early on, whether class treatment is warranted . . . . And sooner rather than later filings are just what Rule 23 encourages." *Id.* at 747.

The Court is not persuaded by Plaintiffs' contention that adopting *China Agritech* would result in a needless multiplicity of protective litigation.  Plaintiffs argue that a bar on tolling for successive class actions would force putative class members to file duplicative class actions across 50 states to preserve their state-law claims, leading to the very inefficiencies *American Pipe* tried to avoid.  But that is not necessarily the case.  Where plaintiffs assert a nationwide class based on one state's laws, putative class members who wish to preserve their own state-law claims can do so in the original class action.  For example, they may seek to represent subclasses of their states' residents, as is now common practice in class actions.  *See, e.g.*, *Partida v. Tristar*, 2021 WL 4352374, at *2 (C.D. Cal. Aug. 5, 2021).  Indeed, in *China Agritech*, the Supreme Court predicted greater adoption of this procedure and rejected the same argument Plaintiffs make here.  584 U.S. at 740 n.2 ("Encouraging early class filings will help ensure sufficient time remains under the statute of limitations, in the event that certification is denied for one of the actions or a portion of the class.  Subclasses might be pleaded in one or more complaints and taken up if necessary; as class discovery proceeds and weaknesses in the class theory or adequacy of representation come to light, the lead complaint might be amended or a new plaintiff might intervene.").

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

Plaintiffs cite only one case that has squarely rejected the application of *China Agritech* to a state statute of limitations. *Wagner v. Air Methods*, 2020 WL 7711331 (D. Colo. Dec. 29, 2020). In *Wagner*, an earlier class action asserted a putative class of workers in 16 states, including Michigan. *Id.* at *6. The court only certified a Kentucky class, effectively denying certification of a class including other states. *Id.* The *Wagner* plaintiffs then filed their own class action, alleging a class of Michigan workers. Though the *Wagner* action would have otherwise been barred by the statute of limitations, the court held that it was tolled by the earlier-filed class action. *Id.* at *7. The court acknowledged that the Michigan tolling statute was "modeled after *American Pipe*" and that "*China Agritech* has clarified the reach of *American Pipe*," but chose to "follow the plain language of the [Michigan] statute as it is." *Id.*

*Wagner* does not sway the Court. The court there recognized that the Michigan statute codified the class-action tolling doctrine from *American Pipe* but did not fully address why *China Agritech* does not apply. Notably, the court did not cite any conflicting or inconsistent Michigan law or otherwise analyze how the Michigan Supreme Court would treat the issue. Since the "plain language" of the Michigan tolling statute was based on Supreme Court precedent, it logically follows that later case law clarifying that precedent would likewise clarify the scope of the statute. Indeed, as noted above, courts in other states have already arrived at this conclusion. *Fierro*, 32 Cal. App. 5th at 291–97.

Accordingly, the Court predicts that the highest courts of Illinois, New Jersey, and Michigan would adopt *China Agritech* and integrate the holding into their states' tolling rules. Plaintiffs' class claims therefore cannot benefit from class-action tolling under those rules. Because the statutes of limitations for Plaintiffs' class claims under Illinois, New Jersey, and Michigan law were not tolled by the *Orshan* litigation, their claims have expired and are time-barred.

### 3.    Tolling of Washington-Law Claims

Next, Apple argues that both Plaintiffs' class claim and Plaintiff Maxwell's individual claim under Washington law should also be dismissed as untimely. Plaintiffs' WCPA claims

United States District Court
Northern District of California

expired in January 2019 absent any tolling.  But unlike Illinois, New Jersey, and Michigan, Washington has not adopted *American Pipe* tolling.  Instead, equitable tolling is available under Washington law in the following circumstances: (1) "when justice requires," (2) when there is "bad faith, deception, or false assurances by the defendant," (3) when the plaintiff is diligent, and (4) "when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations." *Fowler v. Guerin*, 515 P.3d 502, 506 (Wash. 2022).  All four elements must be present to toll the statute of limitations. *Campeau v. Yakima*, 3 Wash. 3d 339, 347 (2024) (en banc).

Here, Plaintiffs fail to demonstrate that they meet all of the *Fowler* requirements. Plaintiffs argue that the first requirement is met because they relied on tolling based on the *Orshan* litigation.  Plaintiffs contend that, without tolling, Plaintiff Maxwell and members of the Washington class will be foreclosed from obtaining relief and punished for choosing the wrong law based on a choice-of-law analysis.  While that may be true, the fact that a statute of limitations bars late claims is not in itself unjust. *Cf. Ruth v. Dight*, 75 Wash. 2d 660, 664 (1969) (en banc) ("There is nothing inherently unjust about a statute of limitations.").  And though choosing the wrong law in the *Orshan* litigation is regrettable, that does not justify forcing Apple to defend against otherwise expired claims.

Plaintiffs contend the second requirement is met because Apple made false assurances when opposing the appeal of the Court's decision denying certification of a nationwide class in *Orshan*.  The Court addressed this argument in the context of judicial estoppel (*see supra* Section III.A.1) and found it unconvincing.  As for the third requirement, Plaintiffs' counsel represents that it immediately began searching for individuals interested in pursuing claims under their own state's laws in October 2024, after the Ninth Circuit declined review of the Court's class certification decision in *Orshan*. *Orshan v. Apple*, No. 24-6271, ECF No. 1.  Plaintiffs filed the instant action less than one year later in June 2025, so the Court finds that the third element is likely met.   Plaintiffs do not make any argument as to the fourth requirement.

As such, Plaintiffs fail to show that all four *Fowler* requirements are met.  Plaintiffs' class

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
13

United States District Court
Northern District of California

claims and individual claims under Washington law do not receive the benefit of equitable tolling under Washington law and are thus untimely.

### 4.    Leave to Consolidate and Amend

Having found that Plaintiffs' class claims under Illinois, New Jersey, Michigan, and Washington law are time-barred, the Court addresses Plaintiffs' alternative request to consolidate and amend.  Plaintiffs argue that, under Rule 42, they should be permitted to consolidate the instant action with the *Orshan* litigation and file a consolidated amended complaint because their claims relate back to the original 2014 complaint in *Orshan*.  Apple opposes Plaintiffs' request and argues that Plaintiffs cannot use relation back to rescue their time-barred claims.

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c).  The *Kempf* plaintiffs contend that relation back applies here because they were members of the nationwide class in *Orshan*, bring claims against the same defendant, allege identical facts, assert the same theories of liability, and sue under analogous state law.  Yet, as Apple observes, courts have repeatedly held that "relation back under Rule 15(c) does not apply to consolidated cases." *Cervantes v. Zimmerman*, 2019 WL 1129154, at *19 (S.D. Cal. Mar. 12, 2019) (collecting cases).  That is because consolidation under Rule 42 "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan*, 289 U.S. 479, 496–97 (1933).  Rather, consolidation is a procedural device—a "mere matter of convenience in administration" to keep cases "in step" while remaining "as independent as before." *Hall v. Hall*, 584 U.S. 59, 70 (2018) (citation omitted).  Accordingly, Plaintiffs cannot use consolidation under Rule 42 to revive their otherwise expired claims. *See, e.g.*, *S. California Fed. Sav. & Loan Ass'n v. United States*, 51 Fed. Cl. 676, 678 (2002).

*Boston Retirement System v. Uber Technologies, Inc.*, the sole case Plaintiffs cite in support of their request, is inapposite.  No. 19-CV-06361, 2021 WL 4503137 (N.D. Cal. Oct. 1,

2021).  Plaintiffs cite *Boston Retirement* for the proposition that *China Agritech* does not apply to addition of new plaintiffs to a class action through consolidation.  But in *Boston Retirement*, the new named plaintiffs were asserting the exact same claims as the existing named plaintiffs on behalf of the same putative class, so the consolidated cases represented one, ongoing action.  *Id.* at *2; *see also In re Allstate*, 966 F.3d 595, 615–16 (7th Cir. 2020) (finding *China Agritech* inapplicable where new named plaintiffs "sought only to rearrange the seating chart within a single, ongoing action").  Further, the consolidation and addition of new plaintiffs in *Boston Retirement* occurred before class certification, whereas *China Agritech* concerned the filing of new class actions after the denial of class certification.  *Bos. Ret. Sys.*, 2021 WL 4503137 at *4. Here, in contrast, Plaintiffs seek to bring claims under different state laws on behalf of different state classes after the denial of class certification.

Accordingly, the Court denies Plaintiffs' request to consolidate their case with the *Orshan* litigation.

## B.    Deceptiveness of Alleged Misrepresentation

Separate from timeliness issues, Apple also contends that Plaintiffs' claims fail because they have not adequately pled that they were deceived or that reasonable consumers would be deceived by Apple's statements.  To state a violation under any of the relevant states' consumer protection laws, Plaintiffs must plead facts plausibly showing that reasonable consumers would be deceived by Apple's advertisements about its 16 GB devices.  *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025).[2]  Apple acknowledges that the Ninth Circuit in *Orshan* held that these kinds of claims are typically not resolvable at the pleading stage.  *Orshan v. Apple Inc.*, 804 F. App'x 675 (9th Cir. 2020).  However, it asserts that the Ninth Circuit has since clarified the pleading standard for consumer protection claims and confirmed that claims like the ones here can

---

[2] Though Apple cites *Bodenburg*, a Ninth Circuit case involving California law, the state laws at issue in this case turn on the same "reasonable consumer" standard.  *See Ash v. PSP Distrib., LLC*, 2023 IL App (1st) 220151, ¶ 36 (Illinois law); *Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251 (App. Div. 2004) (New Jersey law); *Dix v. Am. Bankers Life Assurance Co. of Fla.*, 429 Mich. 410, 418 (1987) (Michigan law); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 50 (2009) (Washington law).

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
15

be dismissed on the pleadings.

Two years ago, in *Whiteside v. Kimberly Clark Corp.*, the Ninth Circuit affirmed dismissal of claims under California's consumer protection laws in a case involving Huggies baby wipes. 108 F.4th 771 (9th Cir. 2024). The front label of the wipes at issue contained a statement indicating the wipes were "plant-based" with an asterisk and the corresponding qualifying statement "70%+ by weight." *Id.* at 775–76. The back label of the wipes contained a full list of both natural and synthetic ingredients. *Id.* The *Whiteside* plaintiffs alleged that this labeling scheme misled consumers into believing that the wipes were made only with natural, plant-based materials. *Id.* The circuit court disagreed and held that "[t]he asterisk and qualifying statement . . . paired with the back label ingredients list, '[makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 785 (citation omitted).

In *Bodenburg*, a case decided just last year, the Ninth Circuit similarly affirmed dismissal of false advertising claims alleging that Apple misrepresented the amount of storage space in iCloud storage plans. *Bodenburg*, 146 F.4th at 771. The plaintiffs alleged that they purchased Apple's "iCloud+ with 200 GB storage" plan—which Apple advertised as providing "additional storage" for a monthly fee—expecting to receive 200 GB of storage in addition to the 5 GB of free storage all users receive when signing up for iCloud. *Id.* at 766. They were surprised to only receive a total of 200 GB (195 GB of additional storage) and claimed that Apple had misled them into believing that they would receive more iCloud storage. *Id.*

In affirming the lower court's order dismissing the claims, the Ninth Circuit acknowledged that "some consumers might conceivably share [the] expectation that purchasing a 200 GB plan would result in a total of 205 GB of storage," but concluded that "this expectation is not reasonable as a matter of law." *Id.* at 769. The circuit court explained that when consumers' alleged expectations "derive[] only from the potential ambiguity in [the defendant's] statements" rather than an "express representation," plaintiffs "cannot plausibly prove that a reasonable consumer would be deceived. *Id.* The Ninth Circuit found Apple's use of the term "additional storage" to be potentially ambiguous, because some consumers could read it in either of two ways:

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
16

as advertising 200 GB in addition to the 5 GB of free storage, or 195 GB of additional storage for a total of 200 GB. *Id.* The court noted that Apple did not expressly represent that consumers would receive 205 GB of storage and, to the extent some of Apple's representations were ambiguous, any ambiguity was dispelled by specific descriptions of iCloud plans that Apple provided, so it was "simply not plausible" that reasonable consumers would be misled. *Id.* To survive dismissal, the Circuit required plaintiffs to "show something more: that Apple's statements would be 'unambiguously deceptive to an ordinary consumer.'" *Id.* (quoting *Whiteside*, 108 F.4th at 780).

Apple contends that *Bodenburg* and *Whiteside* require dismissal here. In the Complaint, Plaintiffs base their claims on Apple's allegedly misleading representation that certain iPhones and iPads offered 16 GB of storage. Compl. ¶¶ 24–25. Plaintiffs allege that they purchased their devices with the expectation that the full 16 GB of advertised capacity would be made available for their personal use and were surprised to find a large percentage of storage space taken up by iOS 8. *Id.* ¶¶ 32–33. Apple argues that Plaintiffs' expectations derive at most from a "potential ambiguity" in Apple's 16 GB statement as opposed to any "express representation" about how much space iOS 8 would consume. *See Bodenburg*, 146 F.4th at 769. Further, Apple qualified on its website and product packaging that the "actual formatted capacity" of its devices would be "less" than the advertised amounts, dispelling any ambiguity as to the available storage capacity on its devices. ECF Nos. 19-7 to -12.[3]

Plaintiffs disagree. Under the relevant state laws, whether a business practice would mislead reasonable consumers is generally a question of fact that cannot be resolved at the

___

[3] In support of its instant motion to dismiss, Apple requests that the Court take judicial notice of certain publications about the size of iOS 8 and facts about Apple's iOS and devices. Req. for Judicial Notice ("RJN"), ECF No. 19. Plaintiffs do not oppose. The Court previously took judicial notice of similar publications and facts about the presence of disclosures on Apple's website and product packaging. *See Orshan v. Apple Inc.*, 2023 WL 3568079, at *5 (N.D. Cal. Mar. 31, 2023); *Orshan v. Apple Inc.*, 2024 WL 4353034, at *1 n.1 (N.D. Cal. Sept. 30, 2024). Here, too, Apple proffers publications to show what was in the public realm during the relevant time period and facts that are generally known or readily verifiable. *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010); Fed. R. Evid. 201(b). The Court therefore GRANTS Apple's RJN.

United States District Court
Northern District of California

pleading stage. *See, e.g. Harris v. Kashi Sales, LLC,* 609 F. Supp. 3d 633, 640 (N.D. Ill. 2022) (denying motion to dismiss claim under Illinois consumer protection laws); *State v. Living Essentials, LLC*, 436 P.3d 857, 873 (2019) (same for claim under Washington law); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 479 (7th Cir. 2020) (same for claim under Michigan law); *Leon v. Rite Aid Corp.*, 774 A.2d 674, 676 (Super. Ct. App. Div. 2001) (same for claim under New Jersey law).[4]  As such, Plaintiffs maintain that the Ninth Circuit applied the correct standard in *Orshan*. 804 F. App'x at 675 ("Plaintiffs' theory that they expected to be able to use the full 16 GB of advertised storage capacity and their alternative theory—that they did not expect to be denied for their own use the 18.1-21.3% of the 16 GB storage capacity that is estimated to be unavailable— are not resolvable at the pleading stage.").[5]  And given the identity between the allegations here and those in *Orshan*, Plaintiffs urge this Court to reach the same conclusion.

Though a close call, the Court ultimately agrees with Plaintiffs.  Courts routinely find that the reasonable consumer standard is a factually intensive inquiry unsuitable for determination on a Rule 12(b)(6) motion.  *Bodenburg* and *Whiteside* are no exception.  *Bodenburg*, 146 F.4th at 769 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage] (quoting *Whiteside*, 108 F.4th at 778) (alterations in original)).  Those two cases are therefore rare exceptions where the facts are such that the plaintiff "could [not] plausibly prove that a reasonable consumer would be deceived." *Id.* (quoting *Williams*, 552 F.3d at 939); *Whiteside*, 108 F.4th at 785 (same).

The Court is not convinced that the instant action is such a rare case.  Under Rule 12(b)(6),

---

[4] Plaintiffs also argue that the "reasonable consumer" test does not apply at all their deceptive omissions theory under Michigan law.  They claim that Michigan law only requires allegations that consumers could not have reasonably discovered the alleged omission. *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999) ("[T]he issue is not whether the omission is misleading to a reasonable consumer, but whether the consumer could reasonably be expected to discover the omission at issue.").  Apple does not address this in its reply.  Regardless, the Court need not reach this issue because it finds that Plaintiffs have sufficiently pled their claims based on a misrepresentation theory.

[5] The Court rejects Plaintiffs' assertion that *Bodenburg* and *Whiteside* are inapposite because they only heighten the pleading requirement for a reasonable consumer under California's consumer protection laws.  The two cases both applied general federal pleading standards rather than some unique detail of California law.

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
18

"a plaintiff must *plausibly allege* that the [alleged misstatement] would be unambiguously deceptive to an ordinary consumer." *Whiteside*, 108 F.4th at 780 (emphasis in original). Put differently, the plaintiff must allege that "'reasonable consumers would [not] require more information before they could reasonably conclude' that the [alleged misstatement] was making a specific representation." *Id.* (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021)).

Read in the light most favorable to Plaintiffs, the factual allegations in the Complaint plausibly show that Apple's "16 GB" statement could be unambiguously deceptive to reasonable consumers. Plaintiffs allege that ordinary consumers of Apple's devices look to purchase certain amounts of storage space and use Apple's representations about storage capacity to comparison shop. Compl. ¶ 37. As such, they aver that reasonable consumers would take Apple's "16 GB" statement at face value and feel no need to inquire further. *See id.* ¶ 32 ("All Plaintiffs were willing to—and did in fact—pay more to acquire Devices with 16GB of storage capacity because they believed 16GB of storage capacity would be available for their personal use.").

Apple counters that the "16 GB" statement is a neutral description of the amount of total storage space on its devices and only "potentially ambiguous" because some consumers may interpret the statement as concerning the storage space available for consumer use. Apple asserts that it made no express representation about how much space iOS 8 would consume and that Plaintiffs have not identified any unambiguously deceptive advertising.

This argument is not convincing because it assumes that consumers of Apple's devices have a certain level of technological sophistication such that they would not misinterpret the "16 GB" statement. As the Ninth Circuit observed in *Orshan*, "[c]onsumers with a wide range of technological needs and varying degrees of technological sophistication purchase Apple's products." 804 F. App'x 675, 675–76. "It is [therefore] not possible to determine without factual development whether it is reasonable for iPhone and iPad consumers to have expected that they would not be denied use of such a substantial portion of the advertised storage capacity, nor is it clear whether, if reasonable, such expectations are shared by a 'significant portion of the general

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
19

consuming public.'" *Id.* (citation omitted).

Even so, Apple argues that no reasonable consumers could be deceived because, as in *Whiteside*, Apple made qualifying statements on its website and product packaging that ameliorated any tendency of its advertising to mislead. Next to the alleged "16 GB" statement, Apple included a superscript number or asterisk directing readers to fine print that stated that the "actual formatted capacity" of Apple's devices was "less" than the advertised amounts. *See* RJN, Exs. 6–11, ECF Nos. 19-7 to -12. Apple claims that these disclaimers make it implausible that reasonable consumers would be deceived, especially given that consumers already knew from decades of common public knowledge that operating systems always take up some storage space on computing devices.

The Court disagrees. To be sure, reasonable consumers viewing Apple's advertisements would see the superscript number or asterisk and be drawn to read the fine print. But contrary to Apple's assertion, its "actual formatted capacity less" disclaimer does not fully dispel the deception alleged here. Plaintiffs assert two alternative theories of deception: that they expected to be able to use the full 16 GB of advertised storage capacity (Compl. ¶ 32) or that they did not expect to be denied for their own use the 18.1-21.3% of the 16 GB that they estimate to be unavailable (*id.* ¶ 33). Apple's qualifying statement only speaks to the former. As to the latter, stating that the "actual formatted capacity" of Apple's devices is "less" than advertised is not enough. "'[L]ess' does not say how much less, and so gives rise to a second inquiry—whether a reasonable consumer who does read the disclaimer would contemplate 'less' to be as much as the approximately 20% decrease here alleged." *Orshan*, 804 F. App'x at 676.

Accordingly, Plaintiffs have made out a plausible claim that reasonable consumers would be deceived by Apple's "16 GB" statements. *Bodenburg* and *Whiteside* do not convince the Court that the Ninth Circuit's holding in *Orshan* should be disturbed.

### C.    Rule 9(b) Particularity

Finally, Apple argues that Plaintiffs have not pled their claims with the particularity required by Rule 9(b). To satisfy Rule 9(b), Plaintiffs must specifically allege "the who, what,

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

United States District Court
Northern District of California

when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). Apple contends that Plaintiffs have not met their burden, because they have not specifically identified which materials they read, what those materials said, when they read those materials, what about the materials led them to believe iOS 8 would not consume storage space, and which materials they relied on before purchasing their devices.

Not so, according to Plaintiffs. Plaintiffs identify the specific representation by Apple at issue as "16 GB." Compl. ¶ 25. They allege that they read this statement in Apple's "website, advertisements, product packaging, and other promotional materials" (*id.* ¶ 24) that that they relied on this statement when purchasing their devices (*id.* ¶ 32). Further, Plaintiffs allege the approximate location where they purchased their devices and that they made these purchases between December 2014 and July 2016 after seeing Apple's "16 GB" statement (*id.* ¶¶ 26–31). Accordingly, Plaintiffs argue that the Complaint sufficiently identifies the who (Apple), what (the "16 GB" representation), where (at least Apple's product packaging and the locations of purchase), and when (at least the dates of purchase). And as the Court found above, Plaintiffs have adequately pled the "how" by plausibly alleging what makes the "16 GB" statement unambiguously deceptive.

In any case, Plaintiffs argue that the Rule 9(b) issue has already been resolved in their favor. The Ninth Circuit in *Orshan* found that the complaint there, which is nearly identical to the one in this case, "furnishe[d] ample notice of the conduct challenged as deceptive: Apple's representation that its devices offered 16 GB of storage capacity, together with its 'actual formatted capacity less' disclaimer, and, additionally, its alleged failure to disclose that the iOS 8 upgrade would consume storage capacity that had previously been available." *Id.* Apple acknowledges this but claims that *Bodenburg*, which was decided years after *Orshan*, alters the analysis. Apple contends that, just like in *Bodenburg*, Plaintiffs' allegations do not pass muster under Rule 9(b) because they do not "point to any statements" that were "false," and instead only identify statements that are "ambiguous." *Bodenburg*, 146 F.4th at 771.

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
21

As the Court explained above, Plaintiffs have sufficiently alleged that the "16 GB" statement is unambiguously deceptive or misleading.  And to the extent Apple argues that Plaintiffs must specify the exact materials they reviewed, as well as where and when they did so, Apple asks more than what is required.  Rule 9(b) only demands allegations that are "specific enough to give the defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  And as the Ninth Circuit held in *Orshan*, the allegations in Plaintiffs' complaint provide the requisite notice.  Apple makes much of the fact that *Orshan* was non-precedential and thus does not bind this Court.  While that may be true, *Orshan* is still highly persuasive and instructive, especially given that *Orshan* dealt with nearly identical allegations.  *Bodenburg*, on the other hand, cannot bear the weight Apple places on it.  That case dealt with different facts and did not purport to change the applicable Rule 9(b) standard.  This Court sees no reason to contradict the circuit court's holding.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Apple's motion to dismiss.  All of Plaintiffs' class claims are time-barred under the relevant statutes of limitations and were not tolled by the *Orshan* litigation.  The Court **STRIKES** these claims from the Complaint.  Likewise, Plaintiff Maxwell's individual claim under Washington law expired under the relevant statute of limitations, and no tolling is available under Washington's equitable tolling rules.  The Court therefore **STRIKES** this individual claim as well.  Apple's motion is otherwise denied.

Should Plaintiffs wish to proceed with their remaining individual claims under Illinois, New Jersey, and Michigan law, the Court **ORDERS** Plaintiffs to file an amended complaint in compliance with this Order.  Plaintiffs must file their amended complaint within 21 days of this Order.

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS

22

United States District Court
Northern District of California

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: March 18, 2026

EDWARD J. DAVILA
United States District Judge

Case No.: 5:25-cv-05244-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. TO DISMISS
23